George B. Hofmann (10005)
Jeffrey L. Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Andrea Andersen, Creditor

---

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re | Bankruptcy No. 17-20502 (JTM) |
| ALLEN ANDERSEN, | Chapter 13 |
| Debtor. | |

---

## REPLY IN SUPPORT OF TRUSTEE'S OBJECTION TO CONFIRMATION AND LIMITED OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

Andrea Andersen ("Andrea"), by her undersigned counsel, hereby submits this Reply in Support of Trustee's Objection to Confirmation and Limited Objection to Confirmation of Chapter 13 Plan (the "Objection"), solely for the purpose of objecting to and disputing certain characterizations of assets and other matters raised by Allen Andersen (the "Debtor") in his most recent Response to Trustee's Objection to Confirmation (the "Response to Objection to Confirmation") filed at Docket No. 45 in the above-captioned case. In support of the Objection, Andrea respectfully states as follows:

### <u>BACKGROUND</u>

1.      On January 24, 2017, the Debtor filed a voluntary petition under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the

above-captioned bankruptcy case (the "Case"). The Case has now been pending for approximately ten months.

2.      Andrea is the Debtor's ex-wife and the Debtor's largest creditor, as shown by her Claim in the amount of $143,705.55, including approximately $42,125.66 in priority domestic support obligations owed by the Debtor to Andrea (the "Claim").

3.      The Debtor Schedules, filed at Docket No. 3 in the Case, show Andrea as a creditor with a debt in the amount of $0.00.

4.      In paragraph 12 of the Debtor's Plan, filed at Docket No. 2 in the Case, the Debtor assets that he "has a claim against his ex-wife that could result in, potentially, $75,000.00 [and] a claim against his other ex-wife that could result in, potentially, $83,742.00 . . . ." It is unclear which of the alleged claims is against Andrea.

5.      Andrea and the Debtor have been involved in divorce and related litigation since at least April 5, 2012, when Andrea filed for divorce from the Debtor.

6.      On June 16, 2017, the Debtor filed a Motion for Sanctions Against Andrea Andersen and David C. Blum (the "Sanctions Motion"), seeking damages exceeding $43,000.00 for Andrea and Blum's alleged violation of the automatic stay.

7.      On July 7, 2017, Andrea filed her Claim (3-1)—after numerous attempts to assert the claim with Debtor's counsel and the Trustee[1]—with the Clerk of the Court.

8.      On July 13, 2017 Andrea amended her Claim to assert a priority debt under § 507(a)(1)(A) in the amount of $42,125.66, and a general unsecured debt in the amount of $101,579.89.

---

[1] See Motion to Accept Proof of Claim No. 3-2 as Timely Filed (the "Motion to Accept Claim") at Docket No. 22 for more details surrounding Andrea's efforts to file her Claim.

9.      On July 13, 2017, Andrea filed the Motion to Accept Claim, wherein she sought an order from the Court deeming her Claim as timely filed under Fed. R. Bankr. P. 5005(c) and the doctrine of informal claims.

10.      On July 31, 2017, the Debtor filed his Objection to the Motion to Accept Claim (the "Objection to Motion to Accept Claim"), wherein he disputed that the Claim should be deemed timely filed and disputed that he owed Andrea anything (in fact, arguing that she owes him despite various state court judgments in her favor against him).

11.      On August 10, 2017, the Court held its first hearing on confirmation of the Debtor's Chapter 13 Plan (the "August 10 Hearing") (the prior two hearing dates scheduled for April 13, 2017 and June 29, 2017, were continued without being held).

12.      At the August 10 Hearing, the Court stated the following:

> Alright, I'm going to continue the confirmation hearing to October 19 at 10 o'clock as a backstop. It's your obligation to resolve the remaining issues with the Trustee and the former Mrs. Andersen prior to that date. So you have to get with her counsel, see what discovery needs to be done and find . . . time on my calendar for a hearing on that matter to present evidence, and if it hasn't been resolved by the time we get to the 19th the case will be dismissed.

See Hearing Audio at Docket No. 35.

13.      In response, counsel for the Debtor indicated that the Court's decision was "very good" and "fair." See Hearing Audio at Docket No. 35.

14.      On October 12, 2017, the Debtor withdrew his Objection to Motion to Accept Claim, with the stated reason being: "Not opposing, want to pay valid part of the claim filed by Allen [sic] Andersen."

15.     On October 12, 2017, the Debtor filed his Objection to Proof of Claim

Number 3 of Andrea Andersen (the "Objection to Claim"), wherein he states that the

priority portion of Andrea's Claim should be limited to $15,053.94 based on accounting

provided by the Office of Recovery Services ("ORS").  The Objection to Claim does not

include an objection to the non-priority unsecured portion of Andrea's Claim. The

Objection to Claim has an objection deadline of November 6, 2017, with a preliminary

hearing scheduled for November 29, 2017.

16.     On October 12, 2017, the Debtor filed his Response to Objection to

Confirmation.

17.     In the Response to Objection to Confirmation, among other things, the

Debtor made the following representations.

(a)     "The business where the Debtor is working is a limited liability

company and the funds in the company accounts are not property of the estate

and should not be listed on Schedule AB. Debtor has not listed the company and

its value in Schedule AB because the businesses were found to belong to the

Debtor's wife, Raylin Andersen in bankruptcy 16-21077. The business was

treated as an asset and administered in her Chapter 7." See Response to

Objection to Confirmation at ¶ 4.

(b)     "The name on the business was changed in March, 2017 when the

business entered into new leases for its sober living residents. The name change

came as a result of a cease and desist letter from an attorney for Next Level

Recovery, LLC claiming trademark infringement. A new LLC, Smart Sober Living,

LLC, was created in January to deal with the potential trademark issues. The

Debtor has no ownership interest in either LLC . . . . Debtor does not have an

ownership interest in the businesses." <u>See</u> Response to Objection to

Confirmation at ¶ 5.

18.    The Debtor's assertions regarding ownership of NxLevel Network, LLC

("NxLevel") are misleading at best. Notably, NxLevel's Operating Agreement dated May

2, 2015 (the "Operating Agreement"), shows that Allen Andersen is a Member of

NxLevel. A redacted copy of the Operating Agreement is attached hereto as "<u>Exhibit A</u>."

Moreover, NxLevel's Reinstatement, on file with Utah's Department of Commerce,

shows that the Debtor is the registered *principal* and registered agent for NxLevel. A

copy of the Reinstatement is attached hereto as "<u>Exhibit B</u>."

19.    The Debtor correctly notes that the Chapter 7 Trustee of the estate of

Raylin Andersen ("Raylin"), Case No. 16-21077, asserted that Raylin's estate was

entitled to an ownership interest in NxLevel. However, the Chapter 7 Trustee needed to

assert and succeed on fraudulent transfer claims to realize on that potential ownership

interest, which he never did. Moreover, the Court *never* found that Raylin's estate

owned NxLevel. That was merely an assertion by the Chapter 7 Trustee. Finally,

Raylin's own statements and schedules show, under penalty of perjury, that she owned

a mere 20% interest in NxLevel (contrary to the Operating Agreement, which shows that

she does not own an interest in NxLevel).

20.    Smart Sober Living, LLC, is not a limited liability company created in

January 2017. In fact, according to records maintained by the Utah Department of

Commerce, Smart Sober Living, LLC was registered with the State on March 25, 2016,

and its registration expired on June 28, 2017 for failure to file renewal documents. The

Debtor is the registered agent and sole member/manager for Smart Sober Living, LLC. A copy of Smart Sober Living, LLC's articles of incorporation is attached hereto as Exhibit C.

21.    The Debtor's First Amended Complaint in the Federal District Court for the State of Utah, Case No. 16-cv-00005 (the "Federal Complaint"), provides further evidence of the Debtor's ownership of NxLevel and related businesses. In fact, the very first sentence of the Federal Complaint states: "Plaintiffs Allen Andersen, NXLevel Network, LLC, and Jessica Zimmerman, own and/or lease sober living homes to many recovering substance abusers. Notably, Raylin is not a party to the Federal Complaint or the underlying federal case and is mentioned nowhere in the Federal Complaint. A copy of the Federal Complaint is attached hereto as Exhibit D.

22.    At best, the Debtor's statements and schedules and other filings with the Court are woefully inaccurate. Despite ample time to amend them, he has failed to do so, and in fact has "doubled-down" on his misstatements. At the August 10 Hearing, the Court required that all outstanding issues with Andrea (and other issues with the Case) be resolved by October 19, 2017. Simply put, it will be impossible for the Debtor to comply with that deadline. Instead, the Debtor has filed a new objection to Andrea's claim, which will require a preliminary hearing and additional evidentiary hearing before the Debtor can present a confirmable plan. As the Debtor's largest general unsecured creditor (which the Debtor apparently no longer disputes), Andrea is also concerned with the speculative and apparently inconsistent language in Paragraph 12(b) of the Debtor's plan, which provides for 100% payment to Andrea and other unsecured

creditors in the event that his potential claims against Andrea are successful. For all of these reasons, Andrea supports the Trustee's ongoing objection to confirmation.

23.    More to the point, the Debtor has shown that his bankruptcy filing involves nothing more than a two-party dispute and is only meant to further the Debtor's litigation strategy against Andrea.

WHEREFORE, Andrea respectfully supports the Trustee's continuing objection to confirmation and asks that the Court uphold its prior "confirm or dismiss" order and dismiss the Case.

Dated: October 16, 2017

COHNE KINGHORN, P.C.

/s/ Jeffrey L. Trousdale
GEORGE B. HOFMANN
JEFFREY L. TROUSDALE
Attorneys for Andrea Andersen

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2017, I electronically filed the **REPLY IN SUPPORT OF TRUSTEE'S OBJECTION TO CONFIRMATION AND LIMITED OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system:

**By Electronic Service**:  I certify that the parties of record in this case as identified below, are registered CM/ECF users, and will be served notice of entry of the foregoing Order through the CF/ECF System:

- Kimberley L. Hansen     khansen@cohnekinghorn.com
- George B. Hofmann     ghofmann@cohnekinghorn.com, dhaney@cohnekinghorn.com;jthorsen@cohnekinghorn.com
- Lon Jenkins tr     ecfmail@ch13ut.org, lneebling@ch13ut.org
- Randall Lee Marshall     marshalawpc@yahoo.com
- Jeffrey L. Trousdale     jtrousdale@cohnekinghorn.com, nlakey@cohnekinghorn.com
- United States Trustee     USTPRegion19.SK.ECF@usdoj.gov
- E. Kent Winward     utahbankruptcyfirm@gmail.com, winlawecf@gmail.com;bcsummarymails@gmail.com;thebankruptcyfirm@yahoo.com;r39103@notify.bestcase.com

**By U.S. Mail**:  In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

☒     None

☐     Manual Notice List:

☐     All parties on the Court's official case matrix.

*/s/ Jessica Thorsen*

# Exhibit A

# \*\*\*CONFIDENTIAL\*\*\*
# FOR INTERNAL COMPANY USE ONLY

## OPERATING AGREEMENT

OF

## NXLEVEL NETWORK, LLC

**a Utah Limited Liability Company**

**Company Organized April 19, 2013**

**(Agreement Effective May 2, 2015)**

# OPERATING AGREEMENT
## OF

## NXLEVEL NETWORK, LLC

THIS OPERATING AGREEMENT OF NXLEVEL NETWORK, LLC, a limited liability company organized under the laws of the State of Utah (hereinafter sometimes referred to as the "Company"), is amended as of the 2nd day of May, 2015, by and between the Member(s), Manager(s), and/or Principle(s) of the Company.



2



8



    1.16   <u>Membership Interest</u>.  The term "Membership Interest" shall mean a
Member's ownership interest in the Company expressed as either a percentage or fraction of the

9



10



  2.4 <u>Names and Addresses of Members</u>.  The full names and mailing addresses of the Members of the Company are set forth on Exhibit "A" attached hereto and by this reference incorporated herein.

11



12



13



14



15



16



17



18



19



20



21



22



23



24



25



26



27



28

EXHIBIT "A"

Names and Addresses of Members

| **Name of Member** | **Mailing Address** |
| --- | --- |
| Allen P. Andersen | 5282 S 575 W<br>Riverdale, Utah 84405 |



NXLOA20150504 - Nxlevel Network, LLC Operating Agreement – Ammended Effective March 2, 2015

# Exhibit B



## State of Utah
**DEPARTMENT OF COMMERCE**
**Division of Corporations & Commercial Code**
This certifies that the Administrative Dissolution has been revoked and the reinstatement is effective and was approved on 5/2/15 in the office of the Division and hereby issues this Certification thereof.

*Kathy Berg*

Kathy Berg
Division Director

# Summary of Online Changes – REINSTATEMENT



Business Name: NXLEVEL NETWORK , LLC

Entity number: 8647219–0160

Date of Filing: 5/2/15

Principal Office Address:
**Street** ........................... 4287 Harrison Blvd
                                    Ste 272
**City** ............................... Riverdale
**State** ............................ UT
**Zip** ............................... 84403

Registered Principals:
New Information (added or updated)
**Name** ........................... ALLEN ANDERSEN
**Position** ....................... Registered Agent
**Address** ...................... 4287 Harrison Blvd
                                    Ste 272
                                    Ogden, UT 84403
Old Information (removed or updated)

**Name** ...........................Allen Andersen
**Position** .......................Registered Agent
**Address** .......................5282 S 575 W
                        Riverdale, UT 84405

Allen Andersen , 5/2/15

Underr GRAMA {63–2–201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

# Exhibit C

File Number: 9745486

# L L C

## Certificate of Organization
### OF
### SMART SOBER LIVING, LLC

The undersigned person(s) do hereby adopt the following Certificate of Organization for the purpose of forming a Utah Limited Liability Company.

## Article I
The name of the limited liability company is to be SMART SOBER LIVING, LLC

## Article II
The purpose or purposes for which the company is organized is to engage in: Technical assistance under Sec.22036 PL 100-690 Federal Anti-Drug Abuse Act 1988 -.& /or housing including accommodation for disabled and non-disabled individuals in accordance with the Federal Fair Housing Act, & ADA

The Company shall further have unlimited power to engage in or to perform any and all lawful acts pertaining to the management of any lawful business as well as to engage in and to do any lawful act concerning any and all lawful business for which a Limited Liability Company may be organized under the Utah Limited Liability Company Act and any amendments thereto.

## Article III
The Company shall continuously maintain an agent in the State of Utah for service of process who is an individual residing in said state. The name and address of the initial registered agent shall be:

(Registered Agent Name & Address)
Allen Andersen
Allen Andersen 1643
Uintah, UT, 84405

State of Utah
Department of Commerce
Division of Corporations & Commercial Code

This certifies that this registration has been filed and approved on 25, March 2016 in the office of the Division and hereby issues this Certification thereof.

KATHY BERG
Division Director

# Article IV

Name, Street address & Signature of all members/managers

Manager #1
Allen Andersen
Allen Andersen 1643
Uintah, UT 84405
Allen Andersen
Signature

DATED 25 March, 2016.

# Article V

Management statement
This limited liability company will be managed by its Managers

# Article VI

Records required to be kept at the principal office include, but are not limited to the following:

## Article VI.1

A current list in alphabetical order of the full name
and address of each member and each manager.

## Article VI.2

A copy of the stamped certificate of Organization
and all certificates of amendments thereto.

## Article VI.3

Copies of all tax returns and financial statements
of the company for the three most recent years.

## Article VI.4

A copy of the company's operating agreement and minutes of each meeting of members.

# Article VII

The street address of the principal place of business is:

1643 E 6700 S Ste.B
Uintah, UT 84405

# Article VIII

The duration of the company shall be perpetual

# Article IX
## MANAGER /MEMBER /AGENT LIABILITY

Under NO condition are any of the company Managers, Members, Agents, Officers, Employees or Contractors liable for any of their actions while acting for and/or behalf of the company. The company agrees to to indemnify and hold harmless any and all acts made on behalf of or in benefit of the company .

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

# Exhibit D

{00350952.DOCX / 2}

Edward W. McBride, Jr. (8236)
Cory A. Caldwell (15563)
**VIAL FOTHERINGHAM LLP**
515 South 400 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 355-9594
Facsimile: (801) 359-1246
Ted.mcbride@vf-law.com
Cory.caldwell@vf-law.com
*Attorneys for Plaintiffs*
_____

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE STATE OF UTAH, CENTRAL DIVISION
_____

| | | |
|---|---|---|
| ALLEN ANDERSEN, an individual; NXLEVEL NETWORK, LLC; a Utah limited liability company; JESSICA ZIMMERMAN, an individual; ROBERT GURNEY, an individual; AMY HODGSON, an individual; and JOHN DOES 1-99; | : : : : : : | **FIRST AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
|      Plaintiffs, | : : | |
| v. | : : | |
| STATE OF UTAH; UTAH DEPARTMENT OF HEALTH AND HUMAN SERVICES; JEFFREY S. HARRIS, an individual; GERALD GANSEY, an individual; DRAPER CITY; VIVIEN PEARSON, an individual; DAVID BERNAL, an individual; WEST JORDAN CITY; BRETT SU'A, an individual; RIVERDALE CITY; SANDY CITY; and WEST VALLEY CITY; | : : : : : : : : : : | Magistrate Judge: Paul M. Warner <br><br> Civil No.: 1:16-cv-00005-PMW |
|      Defendants. | : | |

_____

Plaintiffs, by and through counsel, claim, allege and assert for cause of action, as follows:

1

## PRELIMINARY STATEMENT

Plaintiffs Allen Andersen, NXLevel Network, LLC, and Jessica Zimmerman, own and/or lease sober living homes to many recovering substance abusers. Plaintiffs Robert Gurney and Amy Hodgson are recovering substance abusers and are current residents of the sober living homes. The sober living homes are simply an alcohol and drug free living environment, providing opportunities for recovering disabled individuals to live as a family unit focused on sustaining a lifestyle free of alcohol and drug use. The sober living homes *only* provide housing to recovering addicts and do *not* provide any medical or rehabilitation services. The sober living homes are an affordable, unsupervised, self-run, and self-sustaining housing option to recovering substance abusers.

On May 12, 2015 the Utah State legislature, amended UCA § 62A-2, which now requires a "recovery residence" to obtain a state license and be subject to substantial regulatory oversight including significant administrative and financial requirements. Defendants have threatened the Plaintiffs that if the sober living homes do not become licensed, then Defendants will shut the homes down. If the sober living homes are shut down, Plaintiffs Gurney and Hodgson, along with dozens of other sober living home residents, will be homeless.

This action challenges the State's authority to require licensing for sober living homes as the Plaintiffs' rights to provide and live in such housing are protected by federal laws.

The Plaintiffs seek declaratory and injunctive relief enjoining the Defendants from enforcing UCA § 62A-2, as well as monetary damages, costs of suit and reasonable attorneys' fees.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§

1331 and 1343, 42 U.S.C. § 3613, and 42 U.S.C. § 12133.

2.      Declaratory and injunctive relief is sought pursuant to 28 U.S.C. § 2201, 42

U.S.C. § 3613(c)(1) and 42 U.S.C. § 12133, as well as Rules 57 and 65 of the Federal Rules of

Civil Procedure.

3.      Supplemental jurisdiction for all State of Utah claims are proper pursuant to 28

U.S.C. § 1367.

4.      Venue is proper in the United States District Court for the District of Utah as all

acts complained of occurred within this District.

## PARTIES

5.      Plaintiff Allen Andersen is an individual residing in Weber County, State of Utah.

6.      Plaintiff NXLevel Network, LLC is a Utah limited liability company with

principal offices in Weber County, State of Utah.

7.      Plaintiffs Allen Andersen and NXLevel Network, LLC operate sober living

homes patterned after Oxford Houses that exist throughout the United States. Plaintiffs Andersen

and NXLevel Network, LLC assist in the establishment of affordable housing for individuals

recovering from substance abuse and/or alcoholism. Residents accepted into these homes are

required to follow three rules: (1) be financially self-supported, (2) be democratically self-run,

and (3) immediately expel anyone who relapses into drug and/or alcohol use.

8.     Plaintiff Jessica Zimmerman is an individual and owns the residence at 7077 South 2310 West, West Jordan, Utah. Zimmerman leases this residence to Plaintiff NXLevel Network, LLC with knowledge that premises would be used to provide a sober living home.

9.     Plaintiff Amy Hodgson is an individual, a disabled person as defined under the Fair Housing Act 42 U.S.C. 3601 ("FHA" or "Fair Housing Act" and a resident at 7077 South 2310 West, West Jordan, Utah, a sober living home.

10.     Plaintiff Robert Gurney is an individual, a disabled person as defined by the FHA, and a resident at 5282 South 575 West, Riverdale City; a sober living home.

11.     Defendant Utah Department of Health and Human Services ("DHS") is a division of Defendant State of Utah. One of the DHS's primary function is to exercise and enforce licensure of business within the State of Utah.

12.     Defendant Jeffrey S. Harris is an individual and the Program Manager of DHS.

13.     Defendant Gerald Gansey is an individual and a Licensing Specialist at the DHS.

14.     Defendant Draper City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. Draper City is responsible for acts of its agents and employees, and is responsible for the enforcement of its zone, building and property maintenance codes. The City is a public entity the Americans with Disabilities Act, 42 U.S.C. 12131.

15.     Defendant Vivien Pearson is an individual and a Business License Official for Draper City.

16.     Defendant David Bernal is an individual and a Code Enforcement Officer for Draper City.

17.     Defendant West Jordan City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. West Jordan City is responsible for acts of its agents and employees, and is responsible for the enforcement of its zone, building and property maintenance codes. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131.

18.     Defendant Brett Su'a is an individual and an Issuing Enforcement Official of West Jordan City.

19.     Defendant Riverdale City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. Riverdale City is responsible for acts of its agents and employees, and is responsible for the enforcement of its zone, building and property maintenance codes. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131.

20.     Defendant Sandy City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. Sandy City is responsible for acts of its agents and employees, and is responsible for the enforcement of its zone, building and property maintenance codes. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131.

21.     Defendant West Valley City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. West Valley City is responsible for acts of its agents and employees, and is responsible for the enforcement of its zone, building and property maintenance codes. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131.

## STATEMENT OF THE CASE

22.     In 1988, Congress amended the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* to extend the guarantee of fair housing to handicapped individuals. Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the Fair Housing Act. 42 U.S.C. § 3614a.

23.     Under the Fair Housing Act, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment" 42 U.S.C. § 3602(h). The term "physical or mental impairment" includes "alcoholism" and "drug addiction" (other than addiction caused by current, illegal use of a controlled substance)." 24 C.F.R. § 100.201.

24.     Under the Fair Housing Act, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(1).

25.     The Fair Housing Act further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(2).

26.     The federal regulations implementing the Fair Housing Act further make it unlawful because of a handicap, "to restrict or attempt to restrict the choices of a person by word

6

or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development." 24 C.F.R. § 100.70(a).

27.  The Americans With Disabilities Act requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

28.  The federal regulations implementing the Americans With Disabilities Act prohibit a public entity from administering a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130(6).

29.  The federal regulations implementing the Americans With Disabilities Act also make it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination. 28 C.F.R. § 35.130(4)(I).

30.  Plaintiffs Andersen and NXLevel Network LLC own and/or lease seven (7) residences that are utilized as "sober living homes" in Utah, which Plaintiff Andersen has helped establish. The seven (7) sober living homes are located at the following addresses:

    a.  5282 South 575 West, Riverdale City, Weber County, Utah. Established in November 2013 with an occupancy capacity for 9 males;
    b.  4082 West Mann Way, West Valley City, Salt Lake County, Utah. Established in September 2014 with an occupancy capacity for 8 males;

7

     c.  4078 West Mann Way, West Valley City, Salt Lake County, Utah. Established in September 2015 with an occupancy capacity for 8 males;

     d.  7077 South 2310 West, West Jordan, Salt Lake County, Utah. Established in February 2015, with an occupancy capacity for 14 females, owned by Plaintiff Zimmerman;

     e.  11432 South Cranberry Hill Court, Draper City, Salt Lake County, Utah. Established in September 2015, with an occupancy capacity for 12 males;

     f.  1664 East 11245 South, Sandy City, Salt Lake County, Utah. Established in October 2015, with an occupancy capacity for 12 females;

     g.  10412 South Golden Willow Drive, Sandy, Salt Lake County, Utah. Established in December 2015, with an occupancy capacity for 14 females and minor children.

31.     One of the purposes of the sober living homes is to provide a cost-effective means of providing a supportive, open-ended, alcohol and drug-free living environment for recovering individuals. These sober living homes are intended to serve individuals who have completed detoxification and short-term substance abuse treatment.

32.     Plaintiff Andersen continues to assist the sober living homes with technical/operational assistance to ensure each home stays in compliance with the federal mandated guidelines of the Anti-Drug Abuse Act. He helps to ensure the long-term viability of each of the seven homes, which is prescribed and highly encouraged under the aforementioned Federal guidelines.

33.     These homes are affordable, unsupervised, self-run, self-sustaining sober living homes.  They are simply an alcohol and drug free living environment.  They provide an opportunity for recovering disabled individuals to live as a family unit focused on sustaining a lifestyle free of alcohol and drug use.

34.     Plaintiff Andersen and NXLevel Network, LLC help the sober living homes ensure the financial sustainability, adequate occupancy, and operational consistency. Plaintiffs Andersen and NXLevel Network, LLC do not provide any services that would require health care licensing.

35.    Sober living homes have statistically proven to maintain abstinence from alcohol and drug use by house residents, who are in long-term recovery.

36.    Each of the seven sober living homes functions separately from one another. Each individual home provides *only* housing accommodations for its residents, who are democratically accepted as House Members.

37.    There are no services provided to or by the home residents that may legitimately necessitate professional healthcare licensing and regulatory oversight.

38.    Current residents must approve by vote any new house member.

39.    Each house member may also be "voted out" for non-compliance with house rules.

40.    Each resident of the seven (7) sober living homes is a disabled person, who is in recovery, as defined by 42 U.S.C. and each is entitled to federal statutory protection.

41.    Under UCA § 62A-2-108, the State of Utah requires licensure of any person or entity that establishes, conducts, or maintains a "human services program."

42.    On May 12, 2015, the Utah State legislature amended UCA 62A in its 2015 legislative session.

43.    Under the amended UCA § 62A-2-101(18)(a), a "human services program" includes a "recovery residence."

44.    Under UCA 62A-2-101(24), a recovery residence "means a home or facility, other than a residential treatment or residential support program, that meets at least two of the following requirements:

    (a) provides a supervised environment for individuals recovering from a substance
    abuse disorder;

9

(b) requires more than half of the individuals to be recovering from a substance abuse disorder;

(c) provides or arranges for residents to receive services related to their recovery from substance abuse disorder, either on or off site;

(d) holds the home or facility out as being a recovery residence;

(e) (i) receives public funding; or (ii) runs the home or facility as a commercial venture for financial gain."

45.    Utah's stated purpose for these regulations as stated in UCA § 62A-2-102, is to "to permit or authorize a public or private agency to provide defined human services programs

46.    Despite the fact that sober living homes only provide federally protected housing, under the Utah Administrative Code, Rule R501-18, the State of Utah has imposed that recovery residences provide basic health and safety standards including significant administration and financial requirements.

47.    Rule R501-1-4 and 501-18-4 subjects a recovery residence to an initial licensing fee, a separate initial licensing fee, a separate renewal license fees, plus any other applicable fee.

48.    Rule R501-18-5 requires a recovery residence to ensure that clients receive supporting services.

49.    Rule 501-18-6 requires staffing of the residence including staff-to-client ratios.

50.    Rule 501-18-7 requires a recovery residence to provide client records to the State, including an "intake application" and documentation of supportive services not directly associated with the recovery residence.

51.    Rule 501-18-7(k) states that "treatment is not a required component of a recovery residence."

52.    Rule 501-18-9 sets forth specific requirements for accommodations including locking bathrooms, minimum sleeping space, sources of light, minimum dining space and how

10

each "client" may decorate his or her room. This rule further requires a landlord to be responsible for furniture and residence equipment and the cleanliness and safety of the dwelling.

53.    Rule 501-18-11 sets limitations and medical standards on who may inhabit a recovery residence and where prescription and non-prescription medications must be kept.

54.    UCA § 62A-2 and Utah Administrative Code Rule 501 are mere pretexts to over-regulate and oversee rental housing to individuals with certain types of disabilities – addiction to alcohol or drugs.

55.    The requirements imposed by UCA 62A-2 facially discriminate against disabled persons and also render the sober living homes economically unfeasible and operationally impractical.

56.    The requirements imposed by 62A-2 mandate significant additional financial burdens that will force the sober living homes to shut down.

57.    Upon information and belief, each Defendant municipality where the sober living homes are located, have threatened to enforce or are likely to enforce the requirements imposed by 62A-2.

58.    On November 18, 2015, Defendant David Bernal of Draper City issued a "Notice of Violation" against Plaintiffs Andersen and NXLevel Network, LLC for a possible violation of the sober living homes for failure to have a business license. Plaintiffs would need to fully comply with UCA §62A-2 in order to qualify for a business license in Draper City.

59.    On November 20, 2015, Plaintiff Andersen, on behalf of all Plaintiffs, provided a formal accommodation request to the DHS for the sober living homes. Plaintiffs alleged in their request that they be allowed to continue to operate and have the equal opportunity to use and

11

enjoy the dwelling by its residents. These homes are operated as "single family residences" and Plaintiffs should be allowed a reasonable accommodation for the uninterrupted operation and occupancy of the dwellings.

60.     On December 17, 2015, Plaintiff Andersen received a response from Debbie Kurzban, the Assistant Attorney General for the State of Utah regarding his formal accommodation request asserting that: the State is simply trying to protect the safety of the individuals who rent from Plaintiff; that the sober living homes meet the State of Utah's definition of a "recovery residence"; and that a sober living home is run as a commercial venture for financial gain and is therefore subject to the basic health and safety regulations required for recovery residences in the State of Utah.

61.     On December 1, 2015, Plaintiff Andersen received a second notice from Vivien Pearson, Business License Official of Draper City, for conducting a business without a business license.

62.     On December 29, 2015, Plaintiff Andersen received an email from Defendant Jeffery Harris at DHS containing a "cease and desist order" issued by Defendant Gerald Gansey on August 14, 2015, which Plaintiff Andersen never received. DHS denied Plaintiff Andersen's requests for reasonable accommodations and was informed that all of the sober living homes were being treated by the State as "recovery residences" under UCA §62A-2. As such, the DHS mandated that all the sober living homes comply with licensure as a health care facility, even though the homes only provide housing accommodations.

63.     Plaintiff Zimmerman has received a Notice of Violation from West Jordan City requiring that she comply with the business licensing regulations. West Jordan City has imposed

upon Plaintiff Zimmerman an accruing $50.00 per day penalty. If Plaintiff Zimmerman does not

comply with the business licensing scheme by January 14, 2016, West Jordan City will impose

upon Plaintiff Zimmerman a $100 per day penalty until compliance is met.

64.     Plaintiffs Gurney and Hodgson currently rent their rooms for $400 and

$450/month respectively.

65.     The shutdown of the sober living homes would force Plaintiffs Gurney and

Hodgson to vacate the sober living homes rendering them homeless.

66.     The shutdown of the sober living homes would force dozens of other residents to

vacate the sober living homes, rendering many of the residents homeless.

## CLAIMS FOR RELIEF

### COUNT I
### DECLARATORY RELIEF

67.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 66

above as if fully set forth herein.

68.     The Defendant the State of Utah has amended UCA62A-2 to require that

"recovery residences" comply with a significantly burdensome licensing program.

69.     The Defendants allege that the Plaintiffs' sober living homes qualify as recovery

residences and therefore must comply with the amended licensing scheme.

70.     On August 14, 2015, Defendants, the State of Utah through DHS and its agents,

Jeffrey Harris and Gerald Gansey issued a "cease and desist" order to Plaintiff Andersen

threatening Andersen with potential penalties and criminal charges if compliance with the

licensing scheme was not met.

71.     The Plaintiffs' sober living homes *only* provide housing to recovering alcohol and drug addicts.

72.     The Plaintiffs' sober living do not provide any medical or rehabilitation services for its residents.

73.     The sober living homes' residents are disabled persons under the FHA and ADA.

74.     The amended UCA 62A-2 facially discriminates against the Plaintiffs by treating the Plaintiffs in such a way that:

a.  Violates the FHA as particularly described in Count II;
b.  Violates the ADA as particularly described in Count III; and
c.  Violates the Plaintiffs' civil rights as particularly described herein.

75.     The Court should enter and order a Declaration that:

a.  UCA 62A-2 is invalid and preempted by federal law insofar as it conflicts with the FHA and ADA;
b.  Defendants are enjoined from enforcing the UCA 62A-2 against the Plaintiffs insofar as it conflicts with federal law; and
c.  Defendants are enjoined from either directly or indirectly interfering in any way with Plaintiffs' current use of the sober living homes.

76.     For the above-mentioned reasons, Plaintiffs seek monetary damages and injunctive relief.

## COUNT II
## FAIR HOUSING ACT

77.     Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 76 above.

78.     Defendants and each of them are violating Plaintiffs' rights under the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*, and its implementing regulations by:

a.  denying and otherwise making housing unavailable to Plaintiffs Gurney and Hodgson because of their disability;

  b. denying reasonable accommodations in rules, policies, or practices so as to afford people with disabilities, Plaintiffs Gurney and Hodgson, an equal opportunity to live in a dwelling;

  c. limiting Plaintiffs Andersen, NXLevel Network, LLC, and Zimmerman in renting housing to individuals who have a disability;

  d. using their police powers as a pretext to exclude Plaintiffs Gurney and Hodgson, because of their disability, from zoning neighborhoods;

  e. using their police powers as a pretext to deny Plaintiffs Gurney and Hodgson, because of their disability, opportunity to live in the same neighborhoods as people without disabilities;

  f. interfering with the right of Plaintiffs Gurney and Hodgson to live in dwellings of their choice;

  g. discriminating against Plaintiffs by disparate treatment;

  h. discriminating against Plaintiffs by implementing and enforcing State law that provides disparate impact of law, practice or policy; and

  i. retaliating against Plaintiffs because of their exercise of their fair housing rights.

  79. For the above-mentioned reasons, Plaintiffs seek monetary damages and injunctive relief.

## <u>COUNT III</u>
## <u>AMERICAN WITH DISABILITIESACT</u>

  80. Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 79 above.

  81. The Plaintiffs Allen Andersen, NXLevel Network, LLC, and Zimmerman are associated with, and/or provide housing to people with disabilities as defined in 42 U.S.C. 12102(2).

  82. Plaintiffs Gurney and Hodgson are individuals with a disability, as defined in 42 U.S.C. § 12102(2), and are residents of sober living homes located respectively at 5282 South 575 West, Riverdale City and 7077 South 2310 West, West Jordan.

  83. The Defendants are public entities or are agents of public entities under 42 U.S.C. 12131(1).

84.     The actions of the Defendants to exclude the sober living homes from residential

zones and attempt to legislate the sober living homes violate the rights of the Plaintiffs under the

Americans with Disabilities Act, 42 U.S.C. 12132 *et seq.*, and the regulations promulgated

thereunder by:

      a.   denying the individual residents of the Plaintiffs who are in recovery from
alcoholism and substance abuse the opportunity to participate in or benefit from the
supportive housing program offered;

      b.   using municipal police powers and methods of administering those powers with
the purpose of subjecting the Plaintiffs to discrimination on the basis of their handicap;

      c.   subjecting the individual Plaintiffs, on the basis of their disability, to
discrimination;

      d.   denying the individual Plaintiffs and residents an opportunity to participate in a
program in the most integrated setting appropriate to their needs;

      e.   denying the individual Plaintiffs and residents of the sober living homes, who are
disabled persons, an equal opportunity to participate in or benefit from services and programs
equal to those of people without disabilities;

      f.   utilizing municipal code enforcement services that are not equal to groups of
related non-disabled persons and groups of unrelated disabled persons who are not
recovering alcoholics and drug addicts.

85. For the above-mentioned reasons, Plaintiffs seek monetary damages and injunctive relief.

## COUNT IV
## 42 U.S.C. SECTION 1983

86.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 85

above as if fully set forth herein.

87.     The Defendants DHS, Jeffrey Harris, Gerald Gansey, Draper City; Vivien

Pearson, David Bernal, West Jordan City, and Brett Su'A acting under color of state law, are

violating Plaintiffs' civil rights under 42 U.S.C. § 1983 by:

      a.   utilizing their legislative and police powers and methods of administering those
powers with the purpose of subjecting Plaintiffs and Plaintiffs' residents to discrimination
solely on the basis of their handicap;

      b.   subjecting the individual Plaintiffs and Plaintiffs' residents, solely on the basis of
their handicap, to discrimination under its police powers;

c.   denying Plaintiffs the equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution by applying its legislative and police powers in such a manner as to arbitrarily and irrationally deny Plaintiffs, because of their handicaps and the handicaps of their residents in sober living homes, the residential opportunities afforded to groups of related nondisabled persons and unrelated disabled persons who reside at the sober living residences; and

d.   denying Plaintiffs the equal protection of the law guaranteed by the First Amendment to the United States Constitution by applying its legislative and police powers in such a manner as to deny Plaintiffs' right of association.

88. For the above-mentioned reasons, Plaintiffs seek monetary damages and injunctive relief.

## COUNT V
## PREEMPTION OF UCA 62A-2 BY FAIR HOUSING ACT, 42 U.S.C. § 3601 *et seq.* AND AMERICANS WITH DISABILITY ACT, 42 U.S.C. § 12132.

89.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 88 above as if fully set forth herein.

90.    Utah State Law UCA 62A-2 conflicts with Federal Laws 42 U.S.C. § 3601 *et seq.* and 42 U.S.C. § 12132 and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in that it allows the State of Utah to require a significant and burdensome licensing program for disabled persons who simply wish to live together in a drug-free environment WHEREAS federal law: a) under the ADA, prohibits a public entity from administering a licensing program in a manner that subjects disabled persons to discrimination on the basis of disability (ADA, 28 C.F.R. § 35.130(6)) and b) under the FHA, expressly provides that any state or local law "that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid" (FHA, 42 U.S.C. § 3615).

91.     Therefore, the Utah State Law UCA 62A-2 is preempted by Federal Laws 42 U.S.C. § 3601 *et seq.* and 42 U.S.C. § 12132 and is invalid pursuant to the Supremacy Clause of the United States Constitution.

92.     For the above-mentioned reasons, Plaintiffs seek injunctive relief.

## RELIEF SOUGHT AS TO ALL ACCOUNTS

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.     Enter a declaratory judgment that UCA 62A-2 is facially invalid under, and therefore preempted by, the FHA and ADA.

2.     Enter a temporary restraining order and/or preliminary and permanent injunction enjoining Defendants and all persons in active concert or participating with any of them, from interfering with the operating of the residences as homes for recovering alcoholics and substance abusers, and/or from interfering in any way with the rights of the Plaintiffs to reside in recovery house or sober living premises;

3.     Award compensatory damages;

4.     Grant an award of reasonable costs and attorney fees; and

5.     Order other such relief as the Court deems just and proper.

### PLAINTIFF HEREBY DEMANDS A JURY TRIAL

DATED this 14th day of January, 2016.

**VIAL FOTHERINGHAM LLP**

*/S/ Edward W. McBride, Jr.*

_____

Edward W. McBride, Jr.
*Attorney for Plaintiff*